

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re:

Ron David Winitzky,

Christian Vandenberg Winitzky

Debtor(s).

Case No: 1:08-bk-19337-MT

Chapter: 13

**MEMORANDUM OF DECISION
RE: MOTION TO VALUE PROPERTY AND
STRIP FULLY UNSECURED LIEN**
Date: June 9, 2009
Time: 9:00 AM
Location: Courtroom 302

At issue in this case is whether the Bankruptcy Code allows Chapter 13 debtors who received Chapter 7 discharges within the past four years to strip a completely unsecured consensual lien off their primary residence. This Court concludes that the Bankruptcy Code does not allow this because a discharge is required to lien strip in a Chapter 13 case.

## Statement of Facts

On May 5, 2008, Ron and Christian Winitzky, ("Debtors") filed a petition for relief under Chapter 7 of the Bankruptcy Code. (SV 08-12953-MT) The Chapter 7 trustee administered their case and found that the debtors had no assets that could be sold for the benefit of unsecured creditors. On July 2, 2008, an order was entered granting second trust deed holder J.P. Morgan Chase ("Chase") relief from stay to proceed with a foreclosure sale. On July 7, 2008, an order was entered granting first trust deed holder Greenpoint Mortgage's ("Greenpoint") motion to proceed with a foreclosure sale. The court granted debtors a Chapter

Case 1:08-bk-19337-MT    Doc 35    Filed 05/07/09    Entered 05/12/09 17:12:13    Desc
Main Document        Page 2 of 12

7 discharge on August 20, 2008. Over $100,000 in unsecured credit card debt was discharged in that Chapter 7 case.

On November 4, 2008, Greenpoint recorded a notice of trustee's sale for December 1, 2008. Debtors then filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 20, 2008.[1] Such a situation is known as a "Chapter 20."[2] The debtors scheduled a first trust deed of $634,494 owed to Greenpoint and a second trust deed of $155,000 owed to Chase. Debtors value their residence at $540,000 and filed the declaration of a real estate appraiser in support of a motion to avoid Chase's lien. The plan proposes giving Chase $1 to settle its claim. The debtors seek to strip Chase's lien immediately because they are ineligible for a Chapter 13 discharge. The debtors also seek to strip down Bank of America's $32,000 lien on a Chrysler automobile to $17,000, which they assert is its current value. Lastly, they seek to pay $115 a month directly to Aviva Life Insurance for an exempt life insurance policy on which they previously borrowed $5,339. The plan provides for $1800 a month to be paid for 36 months, to cure arrearages to Greenpoint and pay debtors' counsel.

**Discussion**

No party opposed the motion to avoid Chase's lien and no party objected to confirmation of the plan. Debtors argue that because no creditor has objected, the court should grant the motion. The court has an independent duty to determine whether debtors meet all requirements for confirmation. 11 U.S.C. §1325(a)(1); *In re Quiles*, 262 B.R. 191 (Bankr. D.R.I. 2001). Because valuable property rights are at issue, and a number of cases are now being filed presenting this same question, it is also necessary to address the debtor's right to strip a wholly unsecured lien through a "Chapter 20" process regardless of whether the motion is contested.

---

[1] On December 30, 2008, an order was entered reimposing the automatic stay based on debtors' showing that their income had increased by $1500 and that they would be able to make plan payments. The lien strip issue was not considered at that hearing.

[2] It is a Chapter 20 because the Debtor first files a petition for relief under Chapter 7 and then files a petition for relief under Chapter 13.

- 2 -

1

2      The Bankruptcy Code does allow a debtor to file a Chapter 7 case, receive a Chapter 7

3    discharge, and upon discharge, file a chapter 13 case. *Johnson v. Home State Bank* 501 U.S.

4    78 (1991).[3]  The Chapter 7 discharge erases all dischargeable, unsecured debts. The

5    discharge, however, only prevents creditors from collecting against the debtors personally. *Id.*

6    at 81-83. Any liens on secured property ride through the bankruptcy. *Id.* at 83.  The liens

7    become non-recourse loans. *Id.*  When the debtor then files under Chapter 13, none of the

8    unsecured debt is part of the Chapter 13 case because it has been discharged in the Chapter

9    7 case, but the remaining liens are claims in the Chapter 13. *Id.* at 83.

10

11      In 2005, Congress changed the Bankruptcy Code to deny discharges to debtors who file

12    a petition under Chapter 13 when they already received a discharge in a Chapter 7 case filed

13    within the past four years. 11 U.S.C. §1328(f)(1). This change allows debtors the automatic

14    stay and a chance to work out a repayment plan, but it denies them the benefit of the Chapter

15    13 discharge.

16

17      Section 506(a) allows the court to value property of the estate. 11 U.S.C. § 506(a). A

18    bankruptcy court must take into account the purpose of the valuation and use of the property.

19    *Id.* Once the bankruptcy court determines the value, a claim secured by the property

20    bifurcates. *Id.*  The claim is an allowed secured claim up to the value of the property. Any

21    portion of the claim above the adjudicated value of the property becomes an unsecured claim.

22    *Id.* Section 506(d) voids any unsecured portion of the lien. The Supreme Court, in *Dewsnup v.*

23    *Timm*, found that this authority to strip down liens does not apply in Chapter 7 cases. 502 U.S.

24    410, 417-419 (1992).  The Court reasoned that since section 506(d) is ambiguous as to

25    whether liens continue to pass through bankruptcy unaffected and lien stripping is a major

26

27

28    ───────────────
     [3] In *Johnson,* the Court determined that a Debtor could file a Chapter 13 case after a Chapter 7 because the Code did not
     specifically prevent it. The Court reasoned that Congress specifically prohibited other types of consecutive filing and
     therefore its choice not to prohibit Chapter 20 meant that it was allowed. *Johnson* 501 U.S. at 87.

deviation from pre-Code practice, the Bankruptcy Code does not allow lien stripping in a Chapter 7 Case. *Id.*

In *Gold Coast Asset v. 1441 Veteran Street,* the Court of Appeals considered a bankruptcy court's authority to lien strip in a Chapter 11 case where a plan is not confirmed. 144 F.3d 1288 (9th Cir. 1998). The *Gold Coast* court found that *Dewsnup*'s rationale applied unless the bankruptcy court confirmed a plan. *Id.* at 1293. The Court determined that a lien could not be stripped, with *res judicata*[4] effect, until confirmation because the pre-Code practices allowed for a lien to be stripped only through a confirmed Chapter 11 plan. Significantly, 11 U.S.C. §1129 provides particular protections for undersecured creditors who object to a plan, and confirmation of the plan is the event that discharges the debtor's pre-petition obligations. *See Id.* at 1293 citing *Wade v. Bradford*, 39 F.3d 1126, 1128-29 (10th Cir. 1994); *In re Bowen*, 174 B.R. 840, 852-55 (Bankr. S.D.Ga.1994); *In re Dever*, 164 B.R.132 (Bankr. C.D. Cal. 1994).

In the Ninth Circuit, only a very limited lien stripping related to the debtor's primary residence is allowed in Chapter 13. In Chapter 13, a lien on a residential mortgage may be "stripped down" into an unsecured claim only if it is completely unsecured, despite the language in 11 U.S.C. §1322(b)(2) prohibiting modification of a claim secured by the debtor's residence. *In re Lam*, 211 B.R. 36 (9th Cir. BAP 1997, appeal dismissed, 192 F.3d 1309 (9th Cir. 1999)). *Zimmer v. PSB Lending Corp.,* 313 F.3d 1220 (9th Cir. 2002).

The Supreme Court held that a Chapter 13 debtor is prohibited from reducing an undersecured mortgage on a principal residence down to the fair market value of the property. *Nobelman v. Am. Savings Bank*, 508 U.S. 324 (1993).   *Nobelman*'s reminder of the importance of state law remedies is significant here:

---

[4] *Res Judicata* in this situation means binding application outside of the bankruptcy case.

> In the absence of a controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankrupt's estate to state law," since such "property interests are created and defined by state law." *Butner v. United States, 440 U.S. 48, 54-55, 59 L. Ed. 2d 136, 99 S. Ct. 914 (1979)*. See also *Barnhill v. Johnson, 503 U.S. 393, 398, 118 L. Ed. 2d 39, 112 S. Ct. 1386 (1992)*. Moreover, we have specifically recognized that "the justifications for application of state law are not limited to ownership interests," but "apply with equal force to security interests, including the interest of a mortgagee." *Butner, supra, at 55*. The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under [state] law.

*Nobelman*, 508 U.S. 324 at 329.

In fact, stripping the junior lienholder here would possibly eliminate Chase's rights under California law to redeem the property should the first trust deed holder commence foreclosure proceedings. Cal. Civ. Code §2903. Chase also possesses a right to request the first lien holder to notify them if the debtors are delinquent for over four months. *See* Cal. Civ. Code § 2924e. Should the property increase in value over the course of the Chapter 13 plan, and a sale were to occur, whether voluntarily or through foreclosure, Chase would have a right to any surplus proceeds after the first lienholder is paid. *See* Cal. Civ. Code 2924k(3). [5] These are still important rights where one cannot predict what the value of the property will be and whether debtors will remain current over the life of a three year plan. "To disturb a creditor's rights under traditional state foreclosure law, the federal statutory purpose must be 'clear and manifest.'" *Gold Coast Asset*, 144 F.3d 1288 at 1290,

*Dewsnup* prohibits stripping this lien in a Chapter 7 case. Where a Chapter 13 does not afford a discharge and its main purpose is to work out a repayment plan for debts not discharged in the Chapter 7, a lien strip would allow a debtor to simply do indirectly what the Supreme Court has ruled he may not do directly. Congress has limited a Chapter 13 discharge to once every four years, and has prohibited the discharge of liens on a primary residence in Chapter 7, even where they are wholly unsecured.

---

[5] The *dicta* in *Dewsnup* is consistent with this concern: "Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors who had nothing to do with the mortgagor-mortgagee bargain." *Dewsnup*, 502 U.S. 410 at 417.

Case 1:08-bk-19337-MT    Doc 35    Filed 05/07/09    Entered 05/12/09 17:12:13    Desc
Main Document        Page 6 of 12

The Bankruptcy Code only authorizes a bankruptcy court to issue a discharge in narrow circumstances as authorized by statute. *See* 11 U.S.C. §§ 727(a), 1141, 1228, 1328. If a court could strip a lien, with *res judicata* effect, without issuing the discharge, it would create a special "lien discharge" where a debtor would still be liable for a debt but the creditor could not enforce that debt with the bargained for lien.[6] No language in the Code supports such a discharge and finding that it exists would be a major change from pre-Code practices. *See Dewsnup* 502 U.S. 417-419. A separate lien discharge would also contradict sections 348 and 349 of the Code. Section 348(f)(1)(B) voids 11 U.S.C. § 506(a) valuations when a case under Chapter 13 converts to one under Chapter 7 of the Code. Similarly, section 349(b)(1)(C) reinstates upon dismissal any lien previously avoided under section 506(d). These two provisions demonstrate that conversion or dismissal can happen at any time during a Chapter 13 case until the case is closed. Providing for the reinstatement of liens upon conversion or dismissal keeps the bankruptcy court from modifying state law lien rights without a separate legitimate bankruptcy purpose.

One of the earlier reported cases to consider the Chapter 20 lien stripping question also determined that a Court could not strip a lien, with *res judicata* effect, until a Chapter 13 discharge. *See In re Akram* 259 B.R. 371, at 373-375 (Bankr. C.D.Cal. 2001). The *Akram* court reasoned that the Code required discharge, rather than just plan confirmation, because the plan had to be completed and discharge entered before the Code gave a debtor the same rights as a Chapter 11 debtor with a confirmed plan. *See id. See also, In re Gounder* 266 B.R. 879 (Bankr. E.D.Cal. 2001)(unsecured claim must be allowed as against the estate because the loan became nonrecourse).

---

[6] The Debtors argue that this would not occur in a Chapter 20 because the Chapter 7 discharge removed all of the Debtor's personal liability. Section 506(a) states that when a property is being valued, the claim is secured to the extent it is secured by the Debtor's interest in real property and the rest is an unsecured claim. One court that considered this question determined that even though a Chapter 20 debtor has no personal liability entering the Chapter 13 proceeding, the Debtor voluntarily creates that unsecured claim by valuing the property. *See In re Gounder* 266 B.R. 879 (Bankr. E.D.Ca 2001).

- 6 -

A recent case addressing this issue after the 2005 amendments limiting discharge reached the same result. In *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008), the court ruled that a "no-discharge Chapter 13 case may not . . . result in a permanent modification of a creditor's rights where such modification has traditionally only been achieved through a discharge and where such modification is not binding if a case is dismissed or converted." *Id.* 390 B.R. at 606.

While the above discussion concludes that the lien cannot be discharged as a matter of law, other courts have considered this as a factual question of good faith. In *Quiles*, the debtors filed their Chapter 13 only three weeks after their Chapter 7 discharge was received. The only purpose for the filing was to strip off the unsecured second mortgage. In dismissing their case, the court held that "to confirm a plan on these facts would be antithetical to one of the basic purposes of Chapter 13, which is to propose, where possible, a plan to pay back creditors. These debtors seek only the benefits of Chapter 13, and they shun all the burdens." *In re Quiles*, 262 B.R. 191, 194 (Bankr. D.R.I. 2001).

Insufficient information and no argument have been presented on the good faith question here, but the debtors will need to address it should they wish to amend their plan and continue with this case following this ruling. The debtors first filed under Chapter 7 although they qualified for Chapter 13. At that time, the debtors were three months behind in payments to both Chase and Greenpoint. By the time the Chapter 13 case was filed in November, the debt scheduled for Chase had increased by $6500, and the debt to Greenpoint had increased by $27,000, indicating that no further payments were made following the Chapter 7 filing. The debtors also listed Chase as partially secured in their Chapter 7 schedules. By November and the Chapter 13 filing, debtors allege that Chase's lien was completely unsecured. The value of the debtors' home is reported to have decreased by $100,000 in only three months. Chase was prevented from recording its notice of default by the Chapter 7 filing and then prevented from proceeding with the sale by the Chapter 13 filing. This scenario at least raises the question of whether there was a plan to follow the Chapter 7 filing with Chapter 13 all along

and whether the property valuation was made with adequate inquiry.[7]  While property values did drop quickly last year, this seems extraordinary. For over a year, debtors have avoided foreclosure and made only the few payments to the first trust deed holder required to stay in the Chapter 13 case. While debtors did have some problems with earlier periods of unemployment and significant debts, they have now increased their income by $1500 and may be able to cure the arrearages on both trust deeds through a five year plan.[8]

//

//

//

//

//

//

//

//

//

//

//

//

//

//

---

[7] Incidentally, debtor's counsel charged $2,000 for the initial Chapter 7 filing, followed by $7,000 for the Chapter 13 filing.  Would it not have been more economical to file just one Chapter 13?

[8] The means test in both cases was completed correctly, but it leaves an odd result in light of the debtor's plan to completely avoid paying Chase. The debtors avoided any determination under the Chapter 7 means test that they had sufficient income to be required to convert to Chapter 13 by listing secured payments of $1217 to Chase on lines 42 and 43 of Form B22A (the Chapter 7 Means Test Form).  While this is the correct calculation for the means test, omitting the payment to Chase would have resulted in monthly disposable income of $673.86 -- an insufficient amount to make the monthly second trust deed payments, but an honest result if they were planning on filing a Chapter 13 at that time to strip Chase's lien.  Similarly, Form B22C (the Chapter 13 Means Test Form) schedules both the regular monthly payment and the cure amounts for Chase on lines 47 and 48, increasing the deductions for debt payment by $1297 when there was a stated intention not to pay such debts. With certain changes to their budget and a five year plan, the second trust deed could possibly be paid.

Because the Court cannot grant a discharge in this case, the Code does not allow the Court to strip the lien of Chase Bank.  The debtors may choose to amend their plan accordingly or voluntarily dismiss this case.  If no amended plan is filed by June 5, 2009, the case will be dismissed under 11 U.S.C. §§1307(c)(5) and 1322(b)(3).

May 7, 2009

_____

MAUREEN A. TIGHE

I concur in the result.

_____            May  7 , 2009

GERALDINE  MUND

I concur in the result.

_____            May  7 , 2009

KATHLEEN THOMPSON

**NOTE TO USERS OF THIS FORM**:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category** I. below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category** II. below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or
attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) Memorandum of Decision
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served
in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling
General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following
person(s) by the court via NEF and hyperlink to the judgment or order. As of_____, the
following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary
proceeding to receive NEF transmission at the email address(es) indicated below.

- Shai S Oved    ssoesq@aol.com
- Elizabeth (SV) Rojas    cacb_ecf_sv@ch13wla.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order
was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

**Ron & Christine Winitzky**
145 Greenmeadow Ave
Thousand Oaks, CA 91320

California Student Aid Commission
POB 419041
Rancho Cordova, CA 95741-9041

- 11

J.P. Morgan Chase Bank
4 Chase Metrotech Ctr., 3rd Floor
Brooklyn, NY 11245

J.P. Morgan Chase Bank
c/o Agent for Service of Process
CT Corporation System
818 West Seventh St.
Los Angeles, CA 90017

Steven W. Pite
Parisa Sadoughianzadeh
PITE DUNCAN, LLP
P. O. Box 12289
El Cajon, CA 92022-2289

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ADDITIONAL SERVICE INFORMATION** (if needed):

| Category I (Served by the Court via Notice of Electronic Filing ("NEF"). | Category II (Served by Court via U.S. mail). |
|---|---|
| | |

| Category III (To be served by the lodging party). |
|---|
| |